IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| IN RE:<br><br>DIVERSE LABEL PRINTING, LLC,<br><br>    DEBTOR | CASE NO. 18-10792<br>CHAPTER 11 |
|---|---|
| **Motion to Appoint The Finley Group, Inc. as Chief Restructuring Officer** ||

NOW COMES Diverse Label Printing, LLC (the "Debtor") and moves the Court pursuant to §327 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure as follows:

1. On July 23, 2018 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code.  The Debtor continues in possession of its assets as debtor-in-possession.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3. The Debtor specializes in producing labels for food, food processing, supermarket, consumer goods, and other uses. The company has approximately 70 customers with annual sales of $42 million to $45 million, and 58 employees.

4. On March 19, 2018, the Debtor engaged The Finley Group, Inc. to provide Ed Bidanset as the Company's Interim Chief Executive Officer, reporting directly to Mr. Ewert as the majority owner of the Company.

5. On June 26, 2018, an "Order Setting Bond and Other Relief" (the "Control Order") was entered in the U.S. District Court for the Western District of North Carolina, in Civil Action No. 3:16-cv-00848-FDW-DSC, in which the District Court directed that Mr. Ewert (i) shall transfer control of the Company (among other entities) to The Finley Group, Inc., and (ii) shall not take any action to influence or interfere with the Finley Group's judgment.

6. The Finley Group, Inc. has determined, in the exercise of its business judgment, that the financial condition of the Company necessitates the reorganization of the Company under the protections afforded by Chapter 11 of the United States Bankruptcy Code.

7.	In order to clarify the parties responsible for management decisions during the course of this proceeding, the Debtor seeks appointment by this Court of The Finley Group, Inc. as Chief Restructuring Officer for the Company, with all the duties and powers set forth in Section 1106(a), excluding Section 1106(a)(4) unless so directed by the Court. The powers and duties would include but not be limited to the following:

    a.	To oversee, authorize and direct management of the Debtor with respect to the operation of the business, and to evaluate the desirability of the continuance or sale of such business.

    b.	To oversee, authorize and direct the preparation and filing of all necessary schedules, statements of financial affairs, reports, motions, adversary proceedings, disclosure statement and plan of reorganization.

    c.	To evaluate the ability and means by which some or all of the assets could be refinanced or liquidated to generate cash for the payment of such claims as may be allowed in these proceedings, and to take such steps as may be necessary or appropriate for such purposes.

    d.	To oversee, authorize and take such steps as may be necessary or appropriate with respect to any other matter relevant to the case or to the formulation of a plan and the administration of this proceeding.

    e.	To perform such other services as may be required from time to time and in the interest of the Debtor or its estate.

8.	Except as noted below, The Finley Group, Inc. represents no other entity in connection with this case, and represents or holds no interest adverse to the interest of the estate with respect to the matters on which it is to be employed.

    a.	The Finley Group, Inc. was engaged to provide interim chief executive officer services prepetition, and then was entrusted with greater powers by reason of the Control Order.

    b.	The Finley Group, Inc. also provided limited oversight for RFS, Inc. (an affiliate of the Debtor), but has ceased any further oversight or management role and has directed RFS to retain counsel.

9.	The Finley Group, Inc. has agreed to serve as Chief Restructuring Officer for the Debtor for such compensation as may be subsequently allowed and approved in accordance with the

provisions of the Bankruptcy Code and the July 20, 2018 Engagement Letter attached hereto as <u>Exhibit A</u>.  The Finley Group, Inc. and the Debtor are prepared to execute the Engagement Letter upon the entry of an Order by the Bankruptcy Court approving this Motion.

10. The Finley Group, Inc. also has filed herewith an affidavit pursuant to Bankruptcy Rule 2014, disclosing the information relevant to this Motion.  The affidavit of The Finley Group, Inc. is attached hereto as <u>Exhibit B</u>.

11. The Finley Group, Inc. can and will provide specific benefits to the Debtor and its services will enhance the administration of this case.  The Debtor believes that such services will be in the best interest of all parties involved in this proceeding.

Wherefore, the Debtor prays the Court for the following relief:

1. Appoint The Finley Group, Inc. as Chief Restructuring Officer for the Debtor in this case;
2. Grant such other relief as the Court may deem necessary and proper.


Date:  July 24, 2018

/s/ John A. Northen


**Counsel for the Debtor:**
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone:  919-968-4441

Exhibit A



July 20, 2019

Diverse Label Printing, LLC
1626 Anthony Rd
Burlington, N.C.

Re: The Finley Group, Inc.

The purpose of this letter is to set forth the arrangement pursuant to which The Finley Group, Inc. ("TFG") would provide services to Diverse Label Printing, LLC ("DLP" and/ or the "Company") in its forthcoming Chapter 11 proceeding. The Finley Group is currently providing services as interim Chief Executive Officer pursuant to the Engagement Letter with the Company dated March 19, 2018, and its role has been expanded by reason of the "Order Setting Bond and Other Relief" (the "Control Order") entered on June 26, 2018 by the U.S. District Court for the Western District of North Carolina in Civil Action No. 3:16-cv-00848-FDW-DSC.

The Control Order directed that Brian Ewert, the Manager and holder of 90% of the member interests, (i) shall transfer control of the Company (among other entities) to The Finley Group, and (ii) shall not take any action to influence or interfere with the Finley Group's judgment. The Finley Group has determined, in the exercise of its business judgment, that the financial condition of the Company necessitates the reorganization of the Company under the protections afforded by Chapter 11 of the United States Bankruptcy Code.

This letter will outline our understanding regarding the services to be provided and the manner in which The Finley Group would be compensated for these services, subject to approval by the Bankruptcy Court.

TFG Approach

Since 1985, The Finley Group has been a trusted advisor to owners, corporate executives, boards of directors; financial institutions, lawyers and private equity sponsors. Through constantly changing economic climates and unpredictable marketplace trends, The Finley Group's primary goal is to enhance the decision-making and functional capabilities of our clients. The Finley Group's proficiency is in helping clients foresee, appraise and successfully resolve critical business issues in a fast, concise, and cost-effective manner. We pride ourselves in being pragmatic, results oriented professionals that deliver exceptional value at a reasonable cost.

Scope of Services

Subject to approval by the Bankruptcy Court, we will serve as Chief Restructuring Officer for the Company and provide services as outlined below:

- Preparation and business oversight for the Chapter 11 case.
- Development of financial models and forecasts to assess the cash requirements to sustain the Company through its reorganization including a weekly cash flow forecast.
- Modify the cash forecast, as necessary, to be used as a cash collateral budget or DIP financing budget in conjunction with the bankruptcy case.
- Develop and implement a plan to meet the reporting requirements necessary to support the bankruptcy case, both the initial reporting (such as Petition, Schedules and SOFA) as well as the ongoing periodic reporting such as Monthly Operating Reports, and lender reports.
- Analysis on the business merits of various restructuring options.
- Provide court testimony during the pendency of the Chapter 11 proceeding as deemed appropriate by Company's counsel.
- Represent the Company and assist its other professionals in negotiations with lenders, creditors, and other parties in interest as required to seek a sale of the Company as a going concern, confirmation of a Chapter 11 plan, or other options available in the Chapter 11 case.

Team Members

The Scope of Services will be staffed primarily by a two-person team: Ed Bidanset, Director and Matthew Smith, Managing Director. Ed Bidanset will serve as the lead engagement principal, and all TFG Team Members will work together to minimize duplication of efforts and ensure delivery of timeline objectives.

Fees and Billing Arrangements

Our fees for services are based upon the hours actually expended by each assigned team member extended by the applicable hourly billing rate. For this proposal, we intend to request Court approval of the following billing rates per professional:

| | |
|---|---|
| Managing Directors | $395 |
| Directors | $325 |
| Managers | $250 |
| Paraprofessionals | $120 |

In accordance with our customary practice, we will require a retainer in the amount of $50,000 prior to the commencement of the bankruptcy case. In order that we may be able to provide assistance to the Company once it has filed for bankruptcy, it is necessary that we have no unpaid billings as of the time of filing. Consequently, we will need to collect any fees due to us as of the filing date, either by deducting them from the balance in the retainer account or by payment from the Company. Payments for post-petition services will be made only upon

approval by the Bankruptcy Court (first from any remaining balance of the retainer and then from the Company's available funds).

Any out of town travel time will be billed at 50% of our rates as stated above. Upon completion of the engagement, any portion of the retainer in excess of final billings will be returned to the Company.

Other

1. Our fees are not contingent upon the results of this engagement. We do not predict either results or final developments in this matter.

2. While our work may include an analysis of financial data and preparation of financial statements and projections from Company information, this engagement will not include an audit, compilation or review of financial statements in accordance with generally accepted auditing standards. Accordingly, as part of this engagement, TFG will not express an opinion on any financial statements of the Company.

3. All reports and work product generated by TFG during this engagement are meant for the Company. Unless expressly provided for herein, the Company shall not disclose any of the work or analyses performed by TFG during this engagement to any third party without the prior written consent of TFG, which will not be unreasonably withheld.

4. Our engagement hereunder may be terminated any time by either party from the execution date of this agreement upon written notice thereof to the other party; however, the confidentiality provisions between the parties and the compensation and expense reimbursement provisions will survive such termination.

5. The Company shall indemnify and hold TFG harmless per the terms stated in Exhibit A.

Date: _____

_____
Matt Smith
Director, The Finley Group

Accepted and Agreed:


_____
Ed Bidanset
Interim CEO, Diverse Label Printing, LLC

Exhibit A
Indemnification

The Company shall indemnify and hold TFG harmless from and against any and all expenses (including reasonable attorneys' fees) judgments and fines (if such settlement is approved in advance by the Company) incurred by reason of being made a party or threatened to be made a party to any civil, criminal, administrative or investigative action or suit (a "Claim"), by reason of any act or omission to act before or after the acceptance date of this agreement arising out of and in any way related to this engagement, save and except for claims arising from any gross negligence, fraud or willful misconduct on the part of TFG or its agents or employees to the extent permitted by applicable law.  It is expressly the intention of the parties hereto that TFG shall be indemnified by the Company in the manner set forth and to the maximum extent permitted by applicable law.  In the event the Company shall be obligated hereunder to pay the expenses of any Claim, the Company shall be entitled to assume the defense of such Claim with counsel approved by TFG, which approval shall not be unreasonably withheld, upon the delivery to TFG of written notice of its election to do so.  After delivery of such notice, approval of such counsel by TFG and the retention of such counsel by the Company, the Company will not be liable to TFG under this Agreement for any fees of counsel subsequently incurred by TFG with respect to the same Claim; provided that (i) TFG shall have the right to employ TFG's counsel in any such Claim at TFG's expense and (ii) if (A) the employment of counsel by TFG has been previously authorized by the Company, (B) the Company and TFG shall have reasonably concluded that there is a conflict of interest between the Company and TFG in the conduct of any such defense, or (C) the Company shall not continue to retain such counsel to defend such Claim, then the fees and expenses of TFG's counsel shall be at the expense of the Company.  The Company shall have the right to conduct such defense as it sees fit in its sole discretion, including the right to settle any claim against TFG without the consent of TFG.

Accepted and Agreed:

By: _____
     Ed Bidanset, Interim CEO for Diverse Label Printing, LLC

Date: _____

Exhibit B

## AFFIDAVIT

I, Matthew W. Smith, do solemnly depose and declare as follows:

1. I am a managing director in the Charlotte, NC office of The Finley Group, Inc., a North Carolina corporation duly licensed to do business in the State of North Carolina.

2. The Finley Group, Inc. has previously been retained to serve as the Chief Executive Officer for the Debtor, and now seeks appointment as Chief Restructuring Officer for the Debtor in this case, subject to approval by this Court, as set forth in the attached engagement letter.

3. Except as noted below, neither I nor the company hold or represent any interest adverse to the above-entitled estate.

   a. The Finley Group was engaged to provide interim chief executive officer services prepetition, pursuant to the March 19, 2018 engagement letter attached hereto.

   b. The Finley Group was entrusted with greater powers by reason of the Control Order attached hereto.

   c. The Finley Group also provided limited oversight for RFS, Inc. (an affiliate of the Debtor), but has ceased any further oversight or management role and has directed RFS to retain counsel.

   d. The Finley Group has not exercised oversight over any of the other entities named in the Control Order.

   e. The Finley Group has a banking relationship (for the firm's treasury functions) with First National Bank of Pennsylvania, a creditor holding a secured claim in this case.

4. The total compensation to be paid The Finley Group by the Debtor for the services rendered or to be rendered in connection with this case will be such amounts as may be approved by the Court after notice and hearing and based upon the customary hourly rates charged at the time such services are rendered.

5. No compensation has been received by The Finley Group from the Debtor or any other person on said account, except that prior to the Petition Date, the Financial Consultants received payment of prior invoices for services rendered, and retainer deposit from the Debtor, and the unexpended balance of the retainer in the amount of $55,750.00 is held as security for such post-petition fees and expenses as may be allowed by the Court.

6. There are no further undertakings by these or any other persons or entities to pay The Finley Group for the post-petition fees or expenses of the Debtor.

7. The Finley Group further states that no understanding or agreement exists for a division of fees or compensation between The Finley Group and any other person or entity.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 7/23/18

*(signature)*
Matthew W. Smith

Sworn to and subscribed
before me this 23 day of July, 2018.

*(signature)*
Notary Public
My Commission expires: 8-5-2018

*(Notary seal: KATHY LITTLE BURCH, NOTARY PUBLIC, MECKLENBURG COUNTY, NC)*



March 19, 2018

Diverse Label Printing
1626 Anthony Rd.
Burlington, NC 27215
Attn: Brian Ewert

Re: The Finley Group, Inc. Chief Executive Officer Engagement

Dear Mr. Ewert:

We would like to thank you for the opportunity to submit this proposal, which offers our services to Diverse Label Printing and RFS, Inc. ("DLP" or "Company"). The Finley Group, Inc. ("TFG") has completed hundreds of assignments since 1985 and is well suited for the engagement. Our extensive experience in advising companies in similar situations provides us a solid foundation to perform the tasks necessary to successfully assist you in a timely and cost-effective manner.

This letter will outline our understanding regarding the services to be provided and the manner in which we would be compensated for these services.

<u>Scope of Services</u>

TFG will provide Edward Bidanset as the Company's Interim Chief Executive Officer ("CEO"), reporting directly to the majority Owner, Brian Ewert. It is understood that Mr. Bidanset will work closely with Matt Springer of Madrock Advisors. Mr. Bidanset will serve as an appointed officer of the Company; however, Mr. Bidanset shall not be an employee of the Company, but of TFG.

The CEO will partner with the existing management team to lead the day-to-day operations of the Company with an emphasis on:
- Bringing stability to the Company;
- Serving as a "hands on, operational and financial" executive.

212 S. Tryon Street, Suite 1050, Charlotte, NC 28202
(704) 375-7542   www.finleygroup.com

Diverse Label Printing and RFS, Inc.
Page 2 of 5

In addition to the ordinary course duties of a CEO, the role will include working to assist the Company with the following, as appropriate and necessary and subject to input and guidance from Mr. Ewert and Mr. Springer:

- Partner with the management team to manage and direct the Company in a manner that is consistent with the Company's overall strategic goals
- Manage and direct the development of a rolling 13-week cash receipts and disbursements forecasting tool to provide information related to the Company's liquidity and management thereof
- Analyze performance improvement and cash enhancement opportunities, including assisting with cost reduction and operational improvement initiatives
- Assist with improving the quality and timeliness of the Company's monthly financial reporting
- Lead the continued assessment of the organizational and operational structure of the Company, and implementation of any potential changes necessary
- At any time, we are prepared to assist with such other matters as may be requested that fall within our expertise and that are mutually agreeable.

We are committed to commence this engagement immediately upon your authorization.

## Team Members

Ed Bidanset, a Director, will serve as the Interim Chief Executive Officer and lead engagement principal. We understand that Ed is expected to work 3 days per week and will be expected to travel to the main offices of both DLP and RFS. After 4-6 weeks, we will meet with you to review the appropriate amount of time spent per week on this engagement balancing the time needed to have a positive impact on the business while managing costs.

With prior consent and approval, TFG has the capacity to augment this assignment with additional firm resources. All TFG Team Members will work together to minimize duplication of efforts and ensure delivery of timeline objectives.

## Fees and Billing Arrangements

Our fees for services are based upon the hours actually expended by each assigned team member extended by the applicable hourly billing rate, except as noted below.
Our current standard rates are as follows:

| | |
|---|---|
| Managing Directors | $395 |
| Directors | $325 |
| Managers | $250 |
| Associates | $200 |
| Analysts | $150 |

Diverse Label Printing and RFS, Inc.
Page 3 of 5

Based on our prior discussion and agreement, a discounted daily billing rate of $2,000/Day, with $500/Day to be deferred for 90 days. When daily rates are used, increments of ¼ day will be utilized.

In accordance with our customary practice, we will require a retainer in the amount of $12,000 before we commence our field-work and analysis. We will apply all invoices against the retainer and payments will go to refresh the retainer account. Invoices will be presented every two weeks and will include actual out-of-pocket expenses. It is understood that Mr. Bidanset lives in Chicago, and we will not seek reimbursement for air fare to the Company's primary location in Burlington, NC. Payment of invoices is expected within 7 days. Any out of town travel time will be billed at 50% of our rates as stated above, but are included in the daily rate. Upon completion of the engagement, we will apply the retainer balance against our final billing under this engagement and any portion of the retainer in excess of final billings will be returned to the Company.

Other

1. Our fees are not contingent upon the results of this engagement. We do not predict either results or final developments in this matter.
2. While our work may include an analysis of financial data and preparation of financial statements and projections from Company information, this engagement will not include an audit, compilation or review of financial statements in accordance with generally accepted accounting standards. Accordingly, as part of this engagement, TFG will not express an opinion on any financial statements of the Company.
3. All reports and work product generated by TFG during this engagement are meant for the Company. Unless expressly provided for herein, the Company shall not disclose any of the work or analyses performed by TFG during this engagement to any third party without the prior written consent of TFG.
4. As a part of this engagement, TFG may be requested to assist the Company (and its legal or other advisors) in discussions with other interested parties and/or capital providers. In the event that we participate in such discussions, the representations made and the positions advanced will be those of the Company, not TFG, its principals or employees.
5. Our engagement hereunder may be terminated at any time by either party from the execution date of this agreement upon written notice thereof to the other party; however, the confidentiality provisions between the parties and the compensation and expense reimbursement provisions will survive such termination.
6. The terms of this proposal are extended through March 30, 2018. If the Proposal is not executed by that deadline, a new proposal will need to be prepared.
7. The Company shall indemnify and hold TFG harmless per the terms stated in Exhibit A.
8. The CEO shall be named under the Company's existing directors' and officers' liability insurance, if any.

We look forward to working with you and, if necessary, welcome the opportunity to refine the scope of services to meet your expectations.

Diverse Label Printing and RFS, Inc.
Page 4 of 5

If you have any questions, please call me at (704) 578-9900.

Sincerely,

*[signature]*

Matt Smith
Managing Director

Accepted and Agreed:

*[signature]*

Brian Ewort
Diverse Label Printing
RFS, Inc.

Date: 3-19-18

Diverse Label Printing and RFS, Inc.
Page 5 of 5

## Exhibit A
## Indemnification

The Company shall indemnify and hold TFG harmless from and against any and all expenses (including reasonable attorneys' fees), judgments and fines (if such settlement is approved in advance by the Company) incurred by reason of being made a party or threatened to be made a party to any civil, criminal, administrative or investigative action or suit (a "Claim"), by reason of any act or omission to act before or after the acceptance date of this agreement arising out of and in any way related to this engagement, save and except for claims arising from any gross negligence, fraud or willful misconduct on the part of TFG or its agents or employees to the extent permitted by applicable law. It is expressly the intention of the parties hereto that TFG shall be indemnified by the Company in the manner set forth and to the maximum extent permitted by applicable law. In the event the Company shall be obligated hereunder to pay the expenses of any Claim, the Company shall be entitled to assume the defense of such Claim with counsel approved by TFG, which approval shall not be unreasonably withheld, upon the delivery to TFG of written notice of its election to do so. After delivery of such notice, approval of such counsel by TFG and the retention of such counsel by the Company, the Company will not be liable to TFG under this Agreement for any fees of counsel subsequently incurred by TFG with respect to the same Claim; provided that (i) TFG shall have the right to employ TFG's counsel in any such Claim at TFG's expense and (ii) if (A) the employment of counsel by TFG has been previously authorized by the Company, (B) the Company and TFG shall have reasonably concluded that there is a conflict of interest between the Company and TFG in the conduct of any such defense, or (C) the Company shall not continue to retain such counsel to defend such Claim, then the fees and expenses of TFG's counsel shall be at the expense of the Company. The Company shall have the right to conduct such defense as it sees fit in its sole discretion, including the right to settle any Claim against TFG without the consent of TFG.

Accepted and Agreed:

Diverse Label Printing
RFS, Inc. (collectively the "Company")

By: _____

Title: owner          Date: 3-19-18

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:16-cv-00848-FDW-DSC

| | |
|---|---|
| CARGILL INCORPORATED and CARGILL MEAT SOLUTIONS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>WDS INC., JENNIFER MAIER, and BRIAN EWERT,<br><br>Defendants. | **ORDER SETTING BOND AND OTHER RELIEF** |

**THIS MATTER** is before the Court following the June 21, 2018, hearing at which Brian Ewert was ordered to appear and respond to questions about his assets. *See* Doc. 425.

On April 25, 2018, Plaintiffs moved for issuance of an arrest warrant and injunctive relief against Ewert. Doc. 381. This Court granted the request for issuance of an arrest warrant under N.C. Gen. Stat. § 1-355—deferring the request for injunctive relief to Judge Whitney—and ordered a hearing for Ewert to appear and respond to questions regarding his assets. Doc. 423. The arrest warrant was issued on June 11, 2018, Doc. 424, and stayed the next day, Doc. 425, after the parties informed chambers they were cooperating as to counsel's availability for the hearing and Ewert's attendance. This Court set the evidentiary hearing for June 21, 2018. Doc. 425.

On June 18, 2018, the Court was informed by the U.S. Marshals Service that, according to the U. S. Department of State, Ewert had applied for an expedited passport that day, to be picked up on June 20, 2018. *See* Doc. 426. The Court lifted the stay of the arrest warrant under seal, Doc. 424, unsealing that Order on June 21, 2018, Doc. 433, at which point the warrant was

executed on Ewert, who was present for the evidentiary hearing.[1]

The evidentiary hearing followed, with both sides introducing documentary evidence and live testimony of Ewert.[2] Having considered the evidence introduced by the parties at the June 21, 2018, hearing, the Court issued an oral ruling. This written Order follows.

The Court **FINDS** that Plaintiffs met their burden under N.C. Gen. Stat. § 1-355—having demonstrated the danger of Ewert's leaving the State and that he has property which he has unjustly refused to apply to the judgment—but that several factors mitigate in favor of a moderate bond amount.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Ewert **SHALL** post a surety in the amount of $25,000.

2. Ewert **SHALL** appear for a **status hearing with this Court at 9:30 AM EST on June 26, 2018**, with proof of the bond. Failure to appear with proof of bond will result in Ewert's detention.

3. Ewert **SHALL** surrender his passport (or cancel his application if not yet issued) immediately.

4. Ewert **SHALL** surrender all remaining private plane use hours to Plaintiffs immediately.

---

[1] On June 19, 2018, the Court held a phone conference with counsel for Plaintiffs and Ewert, at which the parties confirmed their understanding Ewert would appear at the June 21 hearing. The Court also understands that, on June 20, 2018, Plaintiffs took Ewert's deposition in advance of the hearing.

[2] Ewert was represented by Terpening Wilder. Counsel for the Ewert Entities, Rayburn Cooper & Durham, was present at defense counsel table but has not yet entered an appearance in this matter. Plaintiffs were represented by Faegre Baker Daniels and Robinson Bradshaw. Trial counsel for WDS and Maier from Tuggle Duggins and Bell Davis Pitt were present in the courtroom but did not formally appear at the hearing.

5. Ewert **SHALL** transfer control of all Ewert Entities to the Finley Group immediately. Such Ewert Entities include, regardless of incorporation status or name changes, WDS, WDS Laundry, WDS Canada, WDS Automation, DLP, DLP Holdings, ODDS, B-Pak, BCD, Resnex, RFS, RTL, TBE, JMA, JIT, and their subsidiaries or affiliates, and all other entities not yet disclosed by Ewert. Ewert **SHALL NOT** take any action to influence or interfere with the Finley Group's judgment.
6. Ewert **SHALL** comply with further requests for information from Plaintiffs.
7. Ewert **SHALL NOT** dispose of any assets that are not exempt from execution.

**SO ORDERED.**

Signed: June 26, 2018

David S. Cayer
United States Magistrate Judge